**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-00304-WJM-MJW

PEACE OFFICERS' ANNUITY AND BENEFIT FUND OF GEORGIA, Individually and on
Behalf of All Others Similarly Situated, and
JACKSONVILLE POLICE AND FIRE PENSION FUND, Individually and on Behalf of All
Others Similarly Situated,

      Plaintiffs,

v.

DAVITA INC.,
KENT J. THIRY,
JAMES K. HILGER, and
JAVIER J. RODRIGUEZ,

      Defendants.

---

**LEAD PLAINTIFFS' SURREPLY TO DEFENDANTS'
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

---

Lead Plaintiffs Peace Officers' Annuity and Benefit Fund of Georgia and the Jacksonville Police and Fire Pension Fund respectfully submit this surreply in response to Defendants DaVita Inc., Kent J. Thiry, James K. Hilger, and Javier J. Rodriguez's Reply Memorandum of Law in Further Support of Their Motion to Dismiss Amended Complaint (Dkt. No. 48, the "Reply"), filed on July 20, 2018.

## ARGUMENT

Lead Plaintiffs are constrained to submit this surreply because Defendants have improperly raised arguments, and cited case law, for the very first time in their Reply. Specifically, the Reply relies primarily—and extensively—upon *Hogan v. Pilgrim's Pride Corporation*, 2018 WL 1316979 (D. Colo. Mar. 14, 2018).  Tellingly, while Defendants now claim that *Hogan* supports their argument that the Amended Complaint should be dismissed (*see* Reply at 4), they failed to cite the decision at all in their Motion—even though it was issued almost two full weeks before the Motion was filed.[1]  In any event, *Hogan* is no help to Defendants.  As explained further below, *Hogan* actually undermines Defendants' principal argument in their Motion to Dismiss, and its facts are completely inapposite to this action.

*First*, in citing *Hogan*, Defendants have completely abandoned their principal argument in their Motion to Dismiss, which was that in order to plead falsity, Lead Plaintiffs had to show there was a formal adjudication that Defendants' steering scheme was illegal.  *See, e.g.*, Motion to Dismiss at 2 ("Plaintiffs have not and cannot plead any indicia of illegality such as guilty pleas or admissions of liability against DaVita in connection with this purportedly illegal scheme."); 16 ("The Complaint does not even attempt to allege any actual finding by any court or

---

[1] *Hogan* was decided on March 14, 2018, and Defendants filed their Motion to Dismiss on March 27, 2018. Significantly, *Hogan* was publicly available the same day it was issued, and was in fact featured in a *Law 360* article published that day.  *See* "Pilgrim's Pride Ducks Investors' Chicken Price-Fixing Suit" (Mar. 14, 2018), *Law 360*, available at https://www.law360.com/articles/1022391.

governmental body that DaVita has engaged in any unlawful conduct with respect to the alleged steering scheme.  It does not allege any admission of illegality, such as a guilty plea or a finding by the DOJ or SEC that anything illegal occurred.").  Contrary to what Defendants argued in their Motion, *Hogan* does not hold that a formal adjudication of illegal conduct is necessary to plead a false statement based on alleged illegality.  As a result, Defendants now explicitly contradict their prior position in the Reply, claiming they "do not assert 'that there needs to be a determination by a court or regulator that DaVita's conduct was unlawful.'"  Reply at 3. Defendants' abandonment of their principal argument is telling, and demonstrates that their Motion to Dismiss is meritless.

*Second,* Defendants' <u>new</u> argument that *Hogan* somehow shows that Lead Plaintiffs failed to plead Defendants' steering scheme with sufficient particularity fails, because *Hogan* is inapposite. In *Hogan*, the plaintiff's "central allegation" was that the defendants "*failed to disclose* an underlying antitrust conspiracy*" in the poultry industry, rendering defendants' statements attributing Pilgrim's success to legitimate business strategies false.  *Hogan,* 2018 WL 1316979, at *6 (emphasis added).  Critically, here, unlike in *Hogan*, Defendants made numerous <u>affirmative public statements expressly denying that the Company was engaging in steering</u>. Specifically, Defendants repeatedly and unequivocally asserted in their public statements that the Company did not steer Medicare and Medicaid patients into AKF-backed commercial plans, and that DaVita's relationship with the AKF was arm's length and strictly adhered to the 1997 OIG opinion.[2]  ¶¶117, 157, 159, 192.  Yet, as shown by the extraordinarily detailed allegations in the

---

[2] The other cases Defendants rely on are also pure omissions cases, none involving the affirmative denials of the precise misconduct alleged that are present here.  *See* Reply at 1 n.2 (citing *Langley v. Booz Allen Hamilton Holding Corp.*, 2018 WL 13167979, at *2 (E.D. Va. Feb. 8, 2018) ("The gravamen of plaintiffs' Complaint is that defendants' various statements were fraudulent . . . because defendants made the statements while, at the same time, *failing to disclose* BAH was committing fraud") (emphasis added); *In re Tyson Foods, Inc. Sec. Litig.*, 275 F.Supp. 3d 970, 976 (fraud allegations based on Tyson's alleged *nondisclosure* of antitrust conspiracy); *Gamm v. Sanderson Farms, Inc.*, 2018 WK 1319157, at **3-4 (S.D.N.Y. Jan. 19, 2018) (same); *In re Mylan N.V. Sec. Litig.*, 2018 WL

Amended Complaint—supported by investigative media reports, numerous testimonials from former high-level DaVita employees, responses by DaVita employees and commercial payers to CMS's August 18, 2016 RFI, and the Company's own internal documents and emails (¶¶54-112)—these statements were patently false. Defendants also claimed in the Company's SEC filings that only "some" patients who did not qualify for Medicaid utilized AKF assistance to purchase commercial plans for secondary insurance, when the truth was exactly the opposite—Defendants were steering all patients who did qualify for Medicaid into AKF-backed commercial plans as their primary insurance. Opp. at 21. Under these circumstances, Defendants unquestionably had a duty under the federal securities laws to disclose the steering scheme to investors—regardless of its illegality or any formal adjudication of its illegality. Id. at 19. Hogan, which does not address this situation, does not hold otherwise.

Third, the allegations in Hogan are a far cry from the particularized facts set forth in Lead Plaintiffs' Amended Complaint. In Hogan, the court held that mere "[a]llegations of parallel conduct and a conclusory assertion of a conspiracy alone will not suffice" to plead a price-fixing scheme. Hogan, 2018 WL 1316979, at *8. Significantly, in that case, the plaintiff failed to allege any facts supporting Pilgrim's supposed "parallel conduct" with other poultry producers, alleging only that Pilgrim and other producers had access to the same data and had cut production to some extent at unspecified times, which the court held amounted to "non-particularized allegations of hypothetical actions." Id. at **7-8. In stark contrast, the Amended Complaint here is replete with highly particularized allegations that Defendants engaged in an illicit Company-wide steering scheme directed by its most senior officers. Indeed, the Company's own internal documents show, among other things, an express Company-wide

---

1595985 (S.D.N.Y. Mar. 28, 2018) (alleging that statements about income, rebate rates, and risk were rendered misleading "by Mylan's *failure to disclose* its underlying wrongdoing") (emphasis added)); *see also* Opp. at 19 n.10.
.

initiative called the "Medicaid Opportunity"—confirmed by numerous confidential witness testimonials—under which DaVita dialysis centers across the country were explicitly mobilized to systematically steer "all" of the Company's Medicaid and Medicare patients into AKF-backed commercial plans for the Company's own financial gain. ¶¶54-112. These particularized allegations are hardly "conclusory," and clearly support an inference that DaVita was illicitly steering patients—misconduct that directly contradicted Defendants' public statements.

Finally, Defendants' assertion that their conduct was not improper or illegal is belied by the allegations of the Amended Complaint and Defendants' own conduct. CMS expressly stated steering was "improper" and Defendants' conduct clearly violated federal anti-kickback laws, as well as every safeguard prescribed by the 1997 OIG Opinion which Defendants publicly relied upon to claim their relationship with the AKF was proper. Opp. at 16-18. Moreover, Defendants repeatedly and emphatically publicly denied they were steering to regulators, the media, commercial payers and investors. Defendants also ceased the practice altogether with respect to DaVita's Medicaid patients a mere week after the October 23, 2016 *St. Louis Post-Dispatch* article revealed the fraud, forfeiting $290 million, or 26%, of the Company's annual profits. *See* Opp. at 17-18. As set forth in Lead Plaintiffs' Opposition, there would be no reason for Defendants to do any of this if steering were perfectly appropriate and legal. *See id.*

## CONCLUSION

For the reasons discussed above and in Lead Plaintiffs' Opposition (Dkt. No. 47), Defendants' Motion to Dismiss should be denied in its entirety.

Dated:  August 3, 2018                          Respectfully Submitted,

                                                */s/ Joseph E. White, III*
                                                Joseph E. White, III

                                                SAXENA WHITE P.A.
                                                Maya Saxena

Joseph E. White, III
Lester R. Hooker
Dianne M. Anderson
150 East Palmetto Park Road
Suite 600
Boca Raton, FL 33432
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
danderson@saxenawhite.com

-and-

Steven B. Singer
Kyla Grant
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
kgrant@saxenawhite.com

*Lead Counsel for the Class*

Kip B. Shuman (23593)
Rusty E. Glenn (39183)
THE SHUMAN LAW FIRM
600 17th Street, Ste. 2800 South
Denver, CO 80202
Telephone:  303-861-3003
303-536-7849 (fax)
kip@shumanlawfirm.com
rusty@shumanlawfirm.com

*Local Counsel for the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 3rd day of August, 2018, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the all registered participants.

*/s/ Joseph E. White, III*
Joseph E. White, III
