**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-00304-WJM-NRN

PEACE OFFICERS' ANNUITY AND BENEFIT FUND OF GEORGIA, Individually and on
Behalf of All Others Similarly Situated, and
JACKSONVILLE POLICE AND FIRE PENSION FUND, Individually and on Behalf of All
Others Similarly Situated,

      Plaintiffs,

v.

DAVITA INC.,
KENT J. THIRY,
JAMES K. HILGER, and
JAVIER J. RODRIGUEZ,

      Defendants.

---

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT, AND MEMORANDUM OF LAW IN SUPPORT**

---

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE ACTION .................................. 3

III.    THE TERMS OF THE SETTLEMENT .................................................................. 5

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .............................. 5

        A.      Lead Plaintiffs and Lead Counsel Are Adequate Representatives ........................ 6

        B.      The Settlement is the Product of Informed Arm's-Length Negotiations................ 6

        C.      The Relief Provided to the Settlement Class is Adequate ..................................... 7

                1.      The Costs, Risks, and Delay of Trial and Appeal....................................... 7

                2.      Other Factors Established by Rule 23(e)(2)(C) Support Approval ........... 9

        D.      All Settlement Class Members Are Treated Equitably.......................................... 11

        E.      The Settlement is Reasonable Considering the Range of Possible
                Recoveries............................................................................................................. 11

        F.      The Judgment of the Parties Favors Preliminary Approval of the
                Settlement .............................................................................................................. 11

V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED........................................... 12

        A.      Numerosity – Rule 23(a)(1) .................................................................................. 12

        B.      Commonality – Rule 23(a)(2)................................................................................ 13

        C.      Typicality – Rule 23(a)(3) .................................................................................... 13

        D.      Adequacy – Rule 23(a)(4)..................................................................................... 13

        E.      Predominance and Superiority – Rule 23(b)(3).................................................... 14

VI.     THE PROPOSED NOTICE SHOULD BE APPROVED ............................................ 14

VII.    PROPOSED SETTLEMENT SCHEDULE .............................................................. 15

VIII.   CONCLUSION....................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
   551 F.2d 804 (10th Cir. 1977) ................................................... 5

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) ................................................ 7

*In re Crocs, Inc. Sec. Litig.*,
   2013 WL 4547404 (D. Colo. Aug. 28, 2013) ........................... 9, 11, 12, 14

*In re Healthsouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) ........................................... 10

*In re Molycorp, Inc. Sec. Litig.*,
   2017 WL 4333997 (D. Colo. Feb. 15, 2017) ............................. 6, 7

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   318 F.R.D. 435 (D. Colo. 2015) ............................................... 13

*In re Ribozyme Pharmaceuticals, Inc. Sec. Litig.*,
   205 F.R.D. 572 (D. Colo. 2001) ............................................... 12

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ............................................... 2, 6, 7

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
   2010 WL 5387559 (D. Colo. Dec. 22, 2010) ............................. 10

*Nakkhumpun v. Taylor*,
   2015 WL 6689399 (D. Colo. Nov. 3, 2015) ............................... 12, 13

*Peace Officer's Annuity & Benefit Fund of Georgia v. DaVita, Inc.*,
   372 F. Supp. 3d 1139 (D. Colo. 2019) ...................................... 3, 4

*Rhodes v. Olson Assocs., P.C.*,
   308 F.R.D. 664 (D. Colo. 2015) ............................................... 6

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ............................................... 6

*Tennille v. Western Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ................................................. 15

*Tuten v. United Airlines Inc.*,
   41 F. Supp. 3d 1003 (D. Colo. 2014)........................................................................ 5

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ........................................................................................... 15

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

**OTHER AUTHORITIES**

D.C.COLO.LCivR 7.1(a).......................................................................................... 1

Lead Plaintiffs[1] hereby move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order: (i) preliminarily approving the proposed Settlement; (ii) certifying the proposed Settlement Class for settlement purposes; (iii) approving the form and manner of providing notice of the proposed Settlement to the Settlement Class; and (iv) scheduling a hearing to consider final approval of the Settlement and approval of the Plan of Allocation and Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses. Pursuant to D.C.COLO.LCivR 7.1(a), Lead Plaintiffs certify that as set forth in ¶3.2 of the Stipulation, Defendants do not oppose the relief sought herein.

## I.    INTRODUCTION

After more than three years of hotly contested litigation, Lead Plaintiffs have resolved all claims against Defendants for the payment of $135 million on behalf of the proposed Settlement Class. This is an extraordinary recovery, as it represents the second largest all-cash settlement of a securities class action in this District's history, while securing for Class members between 31% and 43% of their maximum likely recoverable damages—multiples above the typical securities class action recovery, which between 2010 and 2018 was just 3.9% for similarly-sized settlements. Plaintiffs now seek the Court's preliminary approval of the Settlement. As discussed below, the Settlement satisfies each of the factors relevant on a motion for preliminary approval.

The Settlement involved an extensive litigation effort, including, among other things: (i) a thorough investigation, which included locating internal documents and interviewing numerous confidential witnesses who provided Plaintiffs with information that was critical in pleading their

---

[1] Lead Plaintiffs are the Peace Officers' Annuity and Benefit Fund of Georgia ("Georgia Peace Officers") and the Jacksonville Police and Fire Pension Fund ("Jacksonville P&F") (collectively, "Lead Plaintiffs" or "Plaintiffs"). Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated September 18, 2020 (the "Stipulation") filed herewith; all citations to "¶" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Stipulation; all citations and internal quotations are omitted; and all emphasis is added.

claims; (ii) the filing of a detailed amended complaint; (iii) consultation with various experts; (iv) successfully opposing Defendants' motion to dismiss; (v) extensive class certification discovery and briefing class certification; (vi) opposing Defendants' motion for partial reconsideration; (vii) comprehensive fact discovery, including obtaining, reviewing, and analyzing hundreds of thousands of documents produced by Defendants, the AKF and over twenty third parties; (viii) defending the depositions of each Lead Plaintiff, Plaintiffs' expert on market efficiency, and deposing Defendants' rebuttal expert; (ix) the submission of detailed mediation statements setting forth Plaintiffs' positions on the highly disputed issues in the case; and (x) six formal mediation sessions before a renowned mediator involving extensive negotiations.

Lead Plaintiffs and Lead Counsel have thus vigorously prosecuted the Action from its inception through resolution. Based upon their experience, their evaluation of the facts and the applicable law, their recognition of the substantial amount of the Settlement, and the considerable risk and expense of protracted litigation against Defendants, Lead Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the Settlement Class. This is especially so considering the significant risk that the Class might recover substantially less (or nothing) if the Action were litigated through dispositive motions, trial, and the inevitable appeals. This risk was particularly acute in light of the credible arguments that Defendants advanced on the issues of falsity, scienter, loss causation and damages, among other issues, any one of which could have eliminated any recovery for the Class.

At this stage, only a preliminary evaluation of the Settlement's fairness, such that the Settlement Class should be notified of the proposed Settlement, is required. *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006) (Kane, J.) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed

settlement and to proceed with a fairness hearing"). Plaintiffs respectfully request that the Court

enter the proposed Order submitted herewith, which will, among other things:

(i) preliminarily approve the Settlement pursuant to the Stipulation;

(ii) certify the Settlement Class;

(iii) approve the form and content of the Notice and Summary Notice attached as Exhibits
A-1 and A-3 to the proposed Preliminary Approval Order;

(iv) find that the proposed procedures for distribution of the Notice and publication of the
Summary Notice constitute the best notice practicable under the circumstances, and
comply with due process, Fed. R. Civ. P. 23, and the PSLRA; and

(v) set a schedule and procedures for: (1) disseminating the Notice and publishing the
Summary Notice; (2) requesting exclusion from the Settlement Class; (3) objecting to the
Settlement, the Plan of Allocation, Lead Counsel's application for attorneys' fees and
reimbursement of Litigation Expenses; (4) submitting papers in support of final approval
of the Settlement; and (5) the Settlement Hearing.

## II.     FACTUAL AND PROCEDURAL HISTORY OF THE ACTION

On February 1, 2017, Georgia Peace Officers initiated the Action.  ECF No. 1. On

November 6, 2017, the Court appointed Georgia Peace Officers and Jacksonville P&F as Lead

Plaintiffs, Saxena White P.A. ("Saxena White") as Lead Counsel, and Shuman Glenn & Stecker

("Shuman") as Liaison Counsel. ECF No. 30.   On January 12, 2018, Plaintiffs filed their

Consolidated Amended Class Action Complaint (ECF No. 36) ("Complaint"), which alleged that

Defendants violated the securities laws by making materially false and misleading statements and

omissions regarding Defendants' alleged scheme to "steer" all patients eligible for and/or enrolled

in Medicare and/or Medicaid away from government plans and into high-cost commercial

insurance so DaVita could obtain higher dialysis reimbursement rates.

On March 27, 2018, Defendants moved to dismiss the Complaint. ECF No. 43.  On June

6, 2018, Plaintiffs opposed Defendants' motion, and on July 20, 2018, Defendants filed their reply.

ECF Nos. 47, 48. On March 28, 2019, the Court denied Defendants' motion.  *Peace Officer's*

*Annuity & Benefit Fund of Georgia v. DaVita, Inc.*, 372 F. Supp. 3d 1139 (D. Colo. 2019).  In its Order, the Court sustained five of the 27 alleged misstatements that were "not solely predicated on the illegality of DaVita's relationship to AKF," while reserving judgment on the remaining statements that were "premised on the illegality of the underlying scheme."  *Id*. at 1151-55.

From June 10, 2019 to July 20, 2020, the Parties engaged in extensive discovery. Among other things, Plaintiffs obtained over 844,000 pages of documents from Defendants, the AKF and twenty non-parties; produced 24,000 pages of documents to Defendants; served Defendants with an initial set of six Notices of Deposition; and noticed ten additional depositions.

On January 31, 2020, Plaintiffs filed their motion for class certification and expert report of Chad Coffman. ECF Nos. 83, 83-1. The Parties took and defended Mr. Coffman's deposition on May 27, 2020. On June 29, 2020, Defendants filed their opposition and expert report of Dr. Vinita Juneja.  ECF Nos. 102, 102-1.  On July 16, 2020, Plaintiffs deposed Dr. Juneja.

On February 24, 2020, Defendants moved for Partial Reconsideration of the Court's Order Denying the Motion to Dismiss.  ECF Nos. 90, 91. Defendants argued that the 22 alleged false statements that were based on the claimed illegality of DaVita's scheme should be dismissed because the Department of Justice had closed its investigation of DaVita without taking action, and the related *qui tam* action was subsequently dismissed. *Id*. On April 10, 2020, Plaintiffs filed their opposition, and Defendants replied on May 1, 2020.  ECF Nos. 99, 100.

While Plaintiffs were actively pursuing fact discovery, the Parties agreed to participate in mediation before the Honorable Layn R. Phillips (Ret.), a widely-respected neutral and highly accomplished former District Judge who sat by designation on the United States Court of Appeals for the Tenth Circuit.  The Parties and Defendants' insurance carriers participated in six mediation sessions on September 25, 2019; June 8, 9 and 13, 2020; and July 16 and 19, 2020.  Following the

July 19, 2020 session, Judge Phillips submitted a mediator's proposal to settle the Action for a

cash payment of $135,000,000, which the Parties accepted on July 20, 2020. The Parties thereafter

agreed to a term sheet and negotiated the full settlement terms set forth in the Stipulation.

## III.    THE TERMS OF THE SETTLEMENT

The proposed Settlement, which would resolve the Action in its entirety, provides that

Defendants will pay or cause to be paid $135,000,000 into an escrow account for the benefit of the

Settlement Class. The full terms and conditions of the Settlement are set forth in the Stipulation.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Tenth Circuit has long recognized a strong public policy and presumption favoring

settlements. *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977)

(noting that "[t]he inveterate policy of the law is to encourage, promote and sustain the compromise

and settlement of disputed claims"). This policy has even more force in complex class actions such

as this one, "where substantial judicial resources can be conserved by avoiding formal litigation."

*Tuten v. United Airlines Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (Martinez, J.).

Settlement of a class action is a two-step process. First, the Court performs a preliminary

review to determine if notice of the proposed settlement should be sent to the class; second, after

notice is provided and a hearing held, the Court determines whether to approve the settlement as

"fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Effective December 1, 2018, Rule

23(e)(1) was amended to, among other things, specify that the crux of a court's preliminary review

is whether notice should be provided given the likelihood that the court will be able to finally

approve the settlement and certify a class.[2] As courts in this District explain, a settlement should

---

[2] At final approval, the Court will be asked to review the following core factors identified by
amended Rule 23(e)(2), including whether: (a) Plaintiffs and Lead Counsel adequately represented
the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is
adequate; and (d) the proposal treats class members equitably relative to each other. In assessing

be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (Arguello, J.). As summarized below, and as will be detailed further in a motion for final approval of the Settlement, all factors are met.

## A.   Lead Plaintiffs and Lead Counsel Are Adequate Representatives

Plaintiffs and Lead Counsel have adequately represented the Settlement Class during both the litigation of this Action and its Settlement. Plaintiffs' claims are typical of the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class Members. *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *7 (D. Colo. Feb. 15, 2017). Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long, successful track record of representing investors in such cases. *See* ECF Nos. 83-5, 83-6. Lead Counsel vigorously prosecuted the Settlement Class's claims and expended significant time and effort throughout the litigation. *See* Secs. I and II. The adequacy requirement is thus satisfied.

## B.   The Settlement is the Product of Informed Arm's-Length Negotiations

Settling parties are entitled to a presumption that a proposed settlement is fair and reasonable where the settlement "resulted from arm's length negotiations between experienced counsel." *Lucas*, 234 F.R.D. at 693. Moreover, "[u]tilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached

---

these factors, the Court may also consider the Tenth Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) whether the settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the outcome of the litigation in doubt; (3) whether an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002).

without collusion and should therefore be approved." *Molycorp*, 2017 WL 4333997, at *4.

Here, the Parties engaged in six mediation sessions from September 25, 2019 to July 19, 2020 before the Honorable Layn R. Phillips (Ret.). Judge Phillips is an acclaimed, widely respected mediator who has mediated hundreds of complex disputes with aggregate values in the billions of dollars. His experience includes serving as a District Judge in Oklahoma City and sitting by designation for the Tenth Circuit in Denver. In connection with these sessions, the Parties exchanged multiple detailed written submissions that addressed, among other things, issues related to liability, loss causation, and damages. During the sessions, the Parties also provided detailed presentations concerning their respective views on the Action. Following the sixth mediation, Judge Phillips submitted a mediator's proposal to settle the Action for $135,000,000, which the Parties accepted. Thus, the Settlement was achieved only after arm's-length negotiations overseen by a respected neutral. *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 679, 690 (D. Colo. 2014) (settlement approved where the parties "engaged in extensive negotiations and mediation sessions for over a year" in front of "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases"); *Molycorp*, 2017 WL 4333997, at *4 (same).

### C.    The Relief Provided to the Settlement Class is Adequate

#### 1.    The Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should balance the benefits of the certain recovery for the Class against the risks of continued litigation. *See Lucas*, 234 F.R.D. at 694. Here, there is no question that continued litigation would have been costly, risky, and protracted. Indeed, at the time the Settlement was reached, Defendants' motion for partial reconsideration—which sought to eliminate 22 of the 27 false and misleading statements alleged (i.e. those statements on which the Court reserved judgment)—remained pending and Plaintiffs' motion for class certification was on the verge of becoming fully briefed, with no guarantee as to which of the Parties would prevail

on either of these motions. Although Plaintiffs believe their arguments were meritorious, in light
of Defendants' arguments, certification of the full Class Period was not a foregone conclusion.
Thus, the risks of overcoming Defendants' partial reconsideration motion, as well as obtaining and
maintaining class certification, support approval of the Settlement.

Further, even if Plaintiffs had prevailed at the class certification stage, they would still have
to prove their claims. Indeed, Defendants continued to deny all of Plaintiffs' allegations, and
presented strong and credible arguments as to falsity, materiality, scienter and loss causation. For
example, with respect to those statements that the Court found were premised on the illegality of
the underlying scheme, Defendants argued strenuously that no court or regulator had ever found
that DaVita acted illegally or improperly. To the contrary, Defendants emphasized that courts had
held that DaVita's donations to the AKF were permissible; that the DOJ closed its investigation
without taking action against Defendants; that the *qui tam* action against DaVita was subsequently
voluntarily dismissed; and that there were no other pending regulatory actions or investigations
against DaVita for the alleged misconduct. ECF. No. 91 at 1. Defendants also argued that they
never improperly steered, that their statements regarding their donations to the AKF were truthful
and accurate, and thus Plaintiffs could not have established liability for their claims. *Id*. at 9.

Regarding loss causation, Defendants also argued that numerous factors unrelated to any
alleged steering caused or contributed to the stock price declines alleged in the Complaint, and that
the truth regarding DaVita's alleged steering practices was fully disclosed on either October 23,
2016, which was the date the *St. Louis Post Dispatch* published a detailed article describing
DaVita's alleged steering, or October 31, 2016, when DaVita issued a press release in response to
that article that disclosed DaVita's exposure to third party premium assistance (and which caused
DaVita's stock price to increase in value). If successful, Defendants' loss causation arguments

threatened the viability of the entire action—a significant risk that would have persisted throughout the litigation and inevitable appeals.

While Plaintiffs believe they advanced credible counterarguments on these points, the fact remains that the Court at summary judgment or the jury at trial could have lent such arguments substantial weight, thereby dramatically reducing or eliminating damages. Thus, even if successful at trial, Plaintiffs believe that the likely maximum recoverable damages that could be realistically established ranged from $312 million to $432 million. Accordingly, the recovery here—which ranges from 31% to 43% of the likely maximum recoverable damages—is an outstanding result, and by far exceeds the typical recovery of 3.9% of damages in comparable securities class actions.[3]

In sum, even after a successful trial, there was no guarantee that Plaintiffs would have obtained a judgment greater than the $135 million Settlement, as there was a very significant risk that continued litigation might yield a smaller recovery—or indeed, no recovery at all—several years in the future. *See, e.g., In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *11 (D. Colo. Aug. 28, 2013) (Brimmer, J.) ("*Crocs I*") (preliminary approval where plaintiffs "had to consider the likelihood of success certifying a class, surviving summary judgment, and winning at trial").

### 2.    Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts consider whether the settlement relief is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports preliminary approval here.

---

[3] *See* Securities Class Action Settlements 2019 Review and Analysis (Cornerstone 2020) at p. 6, Fig. 5, available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis (noting 3.9% median recovery in cases from 2010 through 2018 where the damages ranged between $250 million and $499 million).

First, Plaintiffs propose well-established, effective procedures for processing claims and distributing the Net Settlement Fund. Epiq Class Action and Claims Solutions Inc., the proposed Claims Administrator, will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. ¶¶4.1-4.14. This method of claims processing is standard in securities class settlements and has long been found to be effective.

Second, as disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund in an amount not to exceed 30% to compensate them for the services they rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 30% is reasonable in light of the work performed and the historic results obtained, and is well within the range of percentage fees that are regularly awarded in securities class actions and other class actions in this Circuit. *See, e.g., Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.,* 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"); *In re Oppenheimer Roch. Funds Grp. Sec. Litig.,* No. 1:09-md-02063, ECF No. 527 (D. Colo. Jul. 31, 2014) (Kane, J.) (awarding 30% of $89.5 million settlement as "a fee award of 30% of the Settlement funds is consistent with awards made within this District and in similar cases").[4]

---

[4] With respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement under which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class reach a certain threshold—generally called a "blow provision." ¶9.2. Such an agreement is standard in securities class action settlements; is maintained as confidential in order to prevent objectors from threatening to trigger the blow provision to obtain self-interested payments at the expense of the Class; and has no negative impact on fairness. *See In re Healthsouth Corp. Sec. Litig.,* 334 F. App'x 248, 250 n.4 (11th Cir. 2009). The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

**D.** **All Settlement Class Members Are Treated Equitably**

As set forth in the Stipulation at ¶4.3, under the proposed Plan of Allocation—which was developed in consultation with Plaintiffs' damages expert and treats all Settlement Class Members equitably—the Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based upon their recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice). *See* Ex. A-1.

**E.** **The Settlement is Reasonable Considering the Range of Possible Recoveries**

Preliminary approval merely requires an initial fairness evaluation to ensure that the proposed Settlement "falls within the range of possible approval." *Rhodes* at 666. As set forth above, the $135,000,000 Settlement Amount is well within the range of reasonableness to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.

This Settlement represents the second largest cash recovery in a securities class action ever achieved in the District of Colorado and is among the top five such recoveries in the history of the Tenth Circuit. Notably, the median class action settlement in the Tenth Circuit between 2010 and 2019 was $6.7 million. Realistic maximum damages in the case ranged from $312 million to $432 million, and Defendants raised a number of credible arguments concerning falsity, scienter, loss causation and damages throughout the litigation that—if accepted—would have substantially reduced or eliminated altogether recoverable damages, further underscoring the valuable benefits obtained through the proposed Settlement. *See Crocs I*, 2013 WL 4547404, at *12 ("the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery"). In light of these significant risks, the Proposed Settlement is well within the range of reasonableness.

**F.** **The Judgment of the Parties Favors Preliminary Approval of the Settlement**

Preliminary approval is merited here given that "it is evident that the Settling Parties

11

believe that the Settlement Agreement is fair and reasonable." *Crocs I*, 2013 WL 4547404, at *12. Lead Counsel are highly experienced in this type of litigation, are well informed about the strengths and weaknesses of this case following years of litigation, and strongly endorse the Settlement. *Nakkhumpun v. Taylor*, 2015 WL 6689399, at *6 (D. Colo. Nov. 3, 2015) (Arguello, J.) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight"). The Settlement is a product of informed, fair, and honest negotiations among sophisticated parties and experienced counsel, following extensive mediation negotiations, and is deserving of preliminary approval. *See, e.g., Id.* (settlement fair where parties conducted a factual investigation and thorough analysis, consulted with experts, and engaged in mediation, among other things).

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties, consists of all persons who purchased or otherwise acquired DaVita common stock during the period between February 26, 2015 and October 6, 2017, inclusive, and were damaged thereby.[5]

### A.    Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is impracticable." DaVita shares traded on the NYSE, with between 189.2 million and 215.8 million outstanding during the Class Period. "Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities," such as this one. *In re Ribozyme*

---

[5] Excluded from the Settlement Class are Defendants, the Officers and directors of DaVita at all relevant times, and all such excluded persons' Immediate Family members, legal representatives, heirs, agents, affiliates, predecessors, successors and assigns, and any entity in which any excluded person has or had a controlling interest. Also excluded are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order. ¶1.46.

*Pharmaceuticals, Inc. Sec. Litig.*, 205 F.R.D. 572, 577 (D. Colo. 2001). Thus, numerosity is met.

**B.      Commonality – Rule 23(a)(2)**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single [common] question" of law or fact will suffice to establish commonality. *Taylor*, 2015 WL 6689399, at *4. Here, Plaintiffs allege that Defendants' fraudulent scheme involved numerous common questions, including, among others: (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts; (3) whether Defendants acted with scienter; (4) whether Settlement Class members suffered a compensable loss; and (5) the proper measure of damages. Courts in this District have found that similar questions of law and fact easily meet the commonality requirements. *See, e.g., In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 444 (D. Colo. 2015).

**C.      Typicality – Rule 23(a)(3)**

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is satisfied if the claims of the named plaintiff and class members are based on the same legal or remedial theory." *Oppenheimer*, 318 F.R.D. at 444. Moreover, the "positions of the named plaintiffs and the potential class members do not have to be identical." *Id.* Plaintiffs' claims here are typical of the Settlement Class' claims because they all allege that they purchased DaVita's common stock at artificially inflated prices due to Defendants' material misstatements and omissions, and are subject to the same proof as the rest of the Class. Further, Plaintiffs are not subject to any unique defenses that would make them atypical. Typicality is satisfied.

**D.      Adequacy – Rule 23(a)(4)**

The adequacy factor requires a finding that the representative parties will fairly and

13

adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  As set forth in Sec. IV.A,

supra, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

### E.    Predominance and Superiority – Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact

common to class members predominate over any questions affecting only individual members."

Indeed, as the above analysis demonstrates, there are numerous common questions of law and fact,

including whether Defendants' statements were false or misleading, whether Defendants acted

with scienter, and whether, and to what extent, Settlement Class Members suffered damages.

Further, settlement of this class action "is a superior method for resolving this dispute fairly

and effectively" as it "avoids duplicative litigation, saving both plaintiffs and defendants

significant time and legal costs to adjudicate common legal and factual issues" and "because

individual recovery for these claims is likely too small to provide an incentive for individual class

members to adjudicate individual claims." *Crocs I*, 2013 WL 4547404, at *10.

## VI.    THE PROPOSED NOTICE SHOULD BE APPROVED

As outlined in the proposed Preliminary Approval Order, Lead Counsel will notify

Settlement Class Members of the pendency of the Action and the proposed Settlement by causing

the Notice and Claim Form to be mailed to all Settlement Class Members who can be identified

with reasonable effort. The proposed Notice advises Settlement Class Members of: (i) the

pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed

Plan of Allocation; and (iv) information regarding the motion for attorneys' fees and

reimbursement of Litigation Expenses. The proposed Notice also provides specifics on the date,

time and place of the Final Approval Hearing and sets forth the procedures, and deadlines, for

opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation

and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting

a Claim Form. The proposed Preliminary Approval Order also requires the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*. The Notice and Claim Form will also be available on the settlement website established by the Claims Administrator.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice and Summary Notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. Western Union Co*., 785 F.3d 422, 436 (10th Cir. 2015).

## VII.    PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration, which is set forth in the proposed Preliminary Approval Order:

| Deadline for mailing the Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | Up to 20 business days after entry of the Preliminary Approval Order |
|---|---|
| Deadline to publish the Summary Notice | Up to 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after the filing of this Motion, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | Postmarked no later than 120 calendar days after the Notice Date |

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

Dated:  September 18, 2020

Respectfully submitted,

*/s/ Rusty E. Glenn*
Rusty E. Glenn

**SHUMAN, GLENN & STECKER**
Kip B. Shuman
Rusty E. Glenn
600 17th Street, Ste. 2800 South
Denver, CO 80202
Telephone:  303-861-3003
Facsimile:  303-536-7849
rusty@shumanlawfirm.com

*Liaison Counsel for Lead Plaintiffs and the*
*Proposed Settlement Class*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker
Dianne M. Pitre
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitre@saxenawhite.com

-and-

Steven B. Singer
Kyla Grant
Sara DiLeo
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
kgrant@saxenawhite.com
sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the*
*Proposed Settlement Class*

16

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of September, 2020, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all of the registered participants.

*/s/ Rusty E. Glenn*
Rusty E. Glenn