# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00304-WJM-NRN

PEACE OFFICERS' ANNUITY AND BENEFIT FUND OF GEORGIA, Individually and on Behalf of All Others Similarly Situated, and
JACKSONVILLE POLICE AND FIRE PENSION FUND, Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

DAVITA INC.,
KENT J. THIRY,
JAMES K. HILGER, and
JAVIER J. RODRIGUEZ,

      Defendants.

---

## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION,
## AND MEMORANDUM OF LAW IN SUPPORT

---

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ......................................................................... 1

II.    THE TERMS OF THE SETTLEMENT ............................................................. 4

III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .......................... 4

     A.    Legal Standard ......................................................................... 4

     B.    The Settlement is Fair, Reasonable and Adequate and Should be Approved ......... 5

          1.    The Settlement was Fairly and Honestly Negotiated ................................. 5

          2.    Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt ............................................................. 6

          3.    The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief ...................................................................... 8

          4.    The Settlement Class is Adequately Represented, and in the Judgment of All Parties, the Settlement is Fair, Adequate and Reasonable .............................................................................. 9

          5.    Additional Factors Also Support Final Settlement Approval ................... 11

IV.   THE PLAN OF ALLOCATION SHOULD BE APPROVED ........................................ 14

V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................... 15

VI.   CONCLUSION .......................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Home Assur. Co. v. Cessna Aircraft Co.*,
    551 F.2d 804 (10th Cir. 1977) ................................................................... 4

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) .................................................................. 8

*Bloom v. Anderson*,
    2020 WL 6710429 (S.D. Ohio Nov. 16, 2020) ....................................... 11

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    2020 WL 3288059 (D. Kan. June 18, 2020) ......................................... 4, 6

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ......................................... 12

*Diaz v. Lost Dog Pizza, LLC*,
    2019 WL 2189485 (D. Colo. May 21, 2019) .......................................... 14

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
    807 Fed. App'x. 752 (10th Cir. 2020) .................................................... 12

*Farley v. Family Dollar Stores, Inc.*,
    2014 WL 5488897 (D. Colo. Oct. 30, 2014) .......................................... 10

*Gordon v. Chipotle Mexican Grill, Inc.*,
    2019 WL 6972701 (D. Colo. Dec. 16, 2019) .......................................... 12

*In re Crocs Sec. Litig.*,
    2013 WL 4547404 (D. Colo. Aug. 28, 2013) ........................................... 9

*In re Crocs Sec. Litig.*,
    2014 WL 4670886 (D. Colo. Sept. 18, 2014) ........................................... 6

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) ....................................................... *passim*

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) ...................................................... 9

*In re Molycorp, Inc. Sec. Litig.*,
    2017 WL 4333997 (D. Colo. Feb. 15, 2017) ............................................ 5

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
    2014 WL 12768451 (D. Colo. July 31, 2014) ........................................................ 13

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) ............................................................................ 9

*In re Rayonier Inc. Sec. Litig.*,
    2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) ........................................................ 11

*In re Vecco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................ 10

*In re Wilmington Tr. Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018) .......................................................... 11

*O'Dowd v. Anthem*,
    2019 WL 4279123 (D. Colo. Sept. 9, 2019) ................................................. *passim*

*Ramos v. Banner Health*,
    2020 WL 6585849 (D. Colo. Nov. 10, 2020) ................................................ *passim*

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ............................................................................ 4

*Tennille v. Western Union Co.*,
    785 F.3d 422 (10th Cir. 2015) .............................................................................. 13

*Tennille v. Western Union Co.,*
    809 F.3d 555 (10th Cir. 2015) .............................................................................. 13

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ................................................. 9, 10

**STATUTES**

15 U.S.C. §78u-4(a)(7) ................................................................................................ 12

**RULES**

Fed. R. Civ. P.
    23(a) ...................................................................................................................... 15
    23(b) ...................................................................................................................... 15
    23(e) ................................................................................................................ 4, 5, 6

**OTHER AUTHORITIES**

D.C.COLO.LCivR 7.1(a) .............................................................................................. 1

Lead Plaintiffs hereby respectfully move this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for entry of orders (i) granting final approval of the Settlement, and (ii) approving the Plan of Allocation, as fair, reasonable, and adequate.[1]

## I.   **PRELIMINARY STATEMENT**

The Parties have agreed, subject to Court approval, to settle all claims in this Action in exchange for a $135 million all-cash payment—an extraordinary result for the Settlement Class in a case that was highly complex, uncertain and risky.  Indeed, final approval of the Settlement is particularly appropriate in light of these notable factors:

The Settlement is Exceptional: The Settlement represents *the second largest* all-cash securities class action recovery in this District's history, and ranks among the top five such recoveries in the Tenth Circuit.  Moreover, the Settlement recovers an extraordinary percentage of the Class's likely recoverable damages at trial—between 31% and 43%, which is *eight to eleven times* greater than the median 3.9% recovery in similarly sized cases nationally.  By any measure, the historic nature of the Settlement recovery amply supports final approval.

The Unique Risks and Difficulties of the Action: The Settlement is also impressive considering the significant risks that Plaintiffs faced in establishing Defendants' liability given that Defendants continued to vigorously dispute several key issues.  *See* ¶¶105-07.  For example, at the pleading stage, the Court withheld judgment as to whether Plaintiffs had stated a claim on 22 out of 27 of Plaintiffs' alleged false statements—over 80% of Plaintiffs' case—because such statements were predicated on a finding that DaVita's conduct was illegal. Plaintiffs faced

---

[1] Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation (ECF No. 103-1), all citations and internal quotations are omitted, and all emphasis is added. This motion is supported by the Declaration of Joseph E. White, III in Support thereof (the "White Declaration" or "White Decl."), and citations to "¶" or "Ex." are to paragraphs in, and exhibits to, the White Declaration. Pursuant to D.C.COLO.LCivR 7.1(a), Lead Counsel has conferred with Defendants, and Defendants do not oppose the relief requested herein.

significant risks in demonstrating such "illegality" given that: (i) the DOJ declined to intervene in the related *qui tam* action against DaVita; (ii) the *qui tam* action was subsequently voluntarily dismissed; and (iii) to date, no regulator or government agency has found DaVita's steering conduct to be illegal.  Moreover, even if Plaintiffs successfully established liability, Defendants advanced several credible arguments on the key issues of loss causation and damages, including that the full truth of DaVita's alleged steering practices and its relationship with the AKF were disclosed approximately one year prior to the end of the Class Period, requiring the Class Period to end on that date as a matter of law.  Adverse determinations on any one of these issues could have severely limited, or eliminated altogether, the Class's recovery.  The Settlement avoids these risks, including the possibility of no recovery at all, while securing a remarkable $135 million recovery for the Class.

Extensive Litigation Efforts Over Four Years: As detailed in the White Declaration, Lead Plaintiffs vigorously prosecuted this Action from its inception, and without Lead Plaintiffs' efforts, the Settlement would not have been possible.  Indeed, Lead Plaintiffs and Lead Counsel not only initiated this Action, but they filed the only leadership application submitted at the lead plaintiff stage. Thereafter, Plaintiffs' litigation efforts were extensive, including: (i) a comprehensive investigation that located internal documents and confidential witnesses that were critical to pleading Plaintiffs' claims; (ii) filing a detailed 111-page amended Complaint; (iii) consultation with various experts; (iv) successfully opposing Defendants' motion to dismiss; (v) engaging in comprehensive fact discovery, including obtaining and reviewing 845,000 of pages of documents produced by Defendants and over twenty third parties; (vi) extensive class certification-related briefing and discovery; (vii) opposing Defendants' motion for partial reconsideration; and (viii) defending the depositions of each Lead Plaintiff and Plaintiffs' expert

on market efficiency, and deposing Defendants' rebuttal expert.  Through these efforts, Plaintiffs developed a deep understanding of the strengths and weaknesses of their claims.

Arm's-Length Settlement Negotiations: The Settlement is the product of the Parties' extensive, arm's-length negotiations, which included submitting detailed mediation statements and presentations over the course of *six* formal mediations before one of the most renowned mediators in the country—former Federal District Court Judge Layn R. Phillips, who sat by designation on the Tenth Circuit, and who has fully endorsed the Settlement.  Significantly, Lead Plaintiffs rejected several opportunities to settle the Action, and instead pressed on with their litigation efforts to secure the historic recovery embodied in the Settlement.

The Wholly Positive Reaction of the Settlement Class: After complying with all aspects of the Court-ordered notice protocol, Lead Plaintiffs are proud to report that the February 16, 2021 objection and exclusion deadline has now passed, and not a single objection to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fee request was submitted, and only one valid exclusion request on behalf of an individual investor with a small number of shares was received. Moreover, Lead Plaintiffs—sophisticated institutional investors who have actively overseen and participated in the Action from its inception—wholly endorse the Settlement in all respects. Accordingly, the Settlement Class's overwhelming endorsement of the Settlement weighs heavily in favor of granting final approval.  *See Ramos v. Banner Health*, 2020 WL 6585849, at *3 (D. Colo. Nov. 10, 2020) (Martínez, J.).

In sum, and as set forth herein, the Settlement and Plan of Allocation readily meet each of the Tenth Circuit and Rule 23 factors that courts evaluate in connection with a motion for final approval.  Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation as fair, reasonable and adequate.

## II.    THE TERMS OF THE SETTLEMENT

Pursuant to ¶2.1 of the Stipulation, Defendants have paid $135,000,000 into an Escrow Account for the benefit of the Settlement Class. The full terms and conditions of the Settlement are set forth in the Stipulation.

## III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Legal Standard

Courts in the Tenth Circuit recognize that the "inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977). The "presumption in favor of voluntary settlement agreements" is especially strong here, "where substantial judicial resources can be conserved by avoiding formal litigation." *Ramos*, 2020 WL 6585849, at *3.

Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Traditionally, the Tenth Circuit has instructed courts to analyze four factors when making this determination.[2] Rule 23(e) was amended in 2018, and "[t]hese amendments gave four new factors a court must find to render an agreement as fair, reasonable, and adequate."[3] *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). The "goal of this amendment is not to displace any [circuit's

---

[2] Those factors are: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *See, e.g., Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). "The Court may also consider the fact that no objections were filed by any class member." *Ramos*, 2020 WL 6585849, at *2.

[3] The amendment requires consideration of whether: (A) plaintiffs and counsel have adequately represented the class; (B) the settlement was negotiated at arm's-length; (C) the relief for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed fee award, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

unique] factor[s]," however, courts in the Tenth Circuit, including this Court, continue to apply the traditional factors when evaluating the fairness of the settlement of a class action. Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment; *see also O'Dowd v. Anthem*, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) (Mix, Mag.) (the court "first addresses the relevant factors the Tenth Circuit applies [] and then, to the extent that they do not overlap, considers the factors identified in Rule 23(e)(2)"); *Ramos*, 2020 WL 6585849, at *2.

As demonstrated below, and as supported by the declarations submitted herewith,[4] the Settlement more than satisfies each of these factors and should be finally approved.

### B.   The Settlement is Fair, Reasonable and Adequate and Should be Approved

### 1.   The Settlement was Fairly and Honestly Negotiated

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate and reasonable." *O'Dowd*, 2019 WL 4279123, at *13. Moreover, utilization "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (Tafoya, Mag.).

Here, the Settlement negotiations included an intensive mediation process, including the Parties' multiple detailed written submissions and presentations addressing hotly contested issues concerning liability and damages, conducted during six mediation sessions. ¶¶67-75. Significantly, these negotiations were overseen by Hon. Layn R. Phillips (Ret.)—a widely respected mediator whose experience includes serving as a Federal District Court Judge in Oklahoma City and sitting by designation for the Tenth Circuit in Denver, and who has mediated

---

[4] The White Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of the litigation, *inter alia*: the history of the Action (¶¶17-18); the nature of the claims asserted (¶¶19-24); the negotiations leading to the Settlement (¶¶67-76); the risks and uncertainties of continued litigation (¶¶80-81); and the terms of the Plan of Allocation (¶¶91-93).

hundreds of complex disputes with aggregate values in the billions of dollars.  In support of the Settlement, Judge Phillips has provided a declaration attesting that "the negotiations between the Parties were vigorous and conducted at arm's-length and in good faith"; "that the representation provided by counsel for each of the Parties was of the highest caliber"; and that "it is my opinion that the Settlement is fair and reasonable, and I strongly support the Court's approval of the Settlement in all respects."  *See* Declaration of Layn R. Phillips, Ex. A, at ¶¶19, 23, 25; *see also In re Crocs, Inc. Sec. Litig.,* 306 F.R.D. 672, 679, 690 (D. Colo. 2014) (Brimmer, J.) (holding fact that parties "had engaged in extensive negotiations and mediation sessions for over a year" before "Judge Phillips, a sophisticated mediator," favored approval).  Thus, there can be no doubt that the Settlement is fair and worthy of final approval.

### 2.    Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

"[S]erious questions of law and fact exist where disputes between the parties…could significantly impact this case if it were litigated." *O'Dowd*, 2019 WL 4279123, at *13.[5]  As detailed in the White Declaration (¶¶104-08), before the Settlement was reached, Defendants lodged multiple credible defenses to the merits of Plaintiffs' claims, each of which presented grave risks and easily could have resulted in either a substantially lower or no recovery at all.

Indeed, as an initial matter, "[l]itigating an action under the PSLRA is not a simple undertaking." *In re Crocs Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) (Brimmer, J.).  The complexities of this Action—and the ensuing risks therefrom—were even more pronounced here.  For example, in its order on Defendants' motion to dismiss, the Court (i) sustained only five out of the 27 alleged misstatements in the case; (ii) held that Plaintiffs' ability

---

[5] The Tenth Circuit factors—"'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt' and 'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'"— "largely overlap" with Rule 23(e)(2)(C)(i). *Chavez Rodriguez*, 2020 WL 3288059, at *3.

to establish the falsity of the remaining 22 misstatements was "premised on the impropriety or illegality of DaVita's relationship with AKF"; and (iii) reserved judgment on whether the Complaint "adequately pled the falsity of these statements." ECF No. 53 at 22. Thereafter, the DOJ declined to intervene in the related *qui tam* case against DaVita, which was subsequently voluntarily dismissed, and to date, no government agency or regulator has found DaVita's steering conduct to be illegal.  Subsequently, Defendants filed a motion for reconsideration seeking the dismissal of these statements, arguing that the "PSLRA requires plaintiffs asserting securities claims premised on illegal conduct to plead the underlying illegal conduct with specificity," and that the DOJ's decision "negat[ed] the sole basis for Plaintiffs' claim of illegality." ECF No. 91 at 1-2.  An adverse determination on this motion could have virtually eliminated the Class's damages.

Plaintiffs' ability to prove liability and damages was also threatened by the loss causation challenges raised in Defendants' opposition to Plaintiffs' motion for class certification, which likewise remained outstanding at the time of the Settlement. ¶¶56-60. Specifically, Defendants argued that Plaintiffs could not establish loss causation for their claims because (i) numerous factors unrelated to the alleged fraud had caused or contributed to the stock price declines following certain of the alleged corrective disclosures; and (ii) the truth regarding DaVita's alleged steering practices was fully disclosed one year prior to the end of the Class Period with the *St. Louis Post Dispatch*'s article regarding DaVita's steering practices and the Company's October 31, 2016 press release disclosing that it was suspending the Medicaid Opportunity and the financial ramifications from doing so—a disclosure that actually caused DaVita's stock price to *increase* rather than decrease.  *See* ECF No. 102.

Had Defendants prevailed on these arguments, the Class's recovery would have been

severely limited, or eliminated altogether.  Taken collectively, Defendants' arguments threatened the viability of the entire Action—risks that would have persisted throughout the litigation and inevitable appeals.[6]  Thus, "[t]he Settlement Agreement ensures the class members will receive reasonable compensation in light of the uncertainties of litigating to a judgment." *Ramos*, 2020 WL 6585849, at *3. In the face of these significant risks (and numerous others), Lead Plaintiffs and Lead Counsel were able to achieve the $135 million recovery. Accordingly, the Settlement represents an excellent result for the Settlement Class.

### 3.    The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief

In assessing a settlement, courts in this District weigh the recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *O'Dowd*, 2019 WL 4279123, at *13.  Here, there is no question that the Settlement Amount is exceptional, and that continued litigation would have been highly risky, costly, and protracted.

As discussed above, the $135 million recovery achieved here is the second largest all-cash securities class action recovery in the history of this District, is among the top five such recoveries in the history of the Tenth Circuit, and dwarfs the median class action settlement in the Tenth Circuit between 2010 and 2019, which was $6.7 million.[7] *See* ¶¶4, 109-10. Additionally, this remarkable recovery for investors not only includes the proceeds of Defendants' insurance tower, but also includes a substantial monetary contribution by Defendant DaVita—a rare occurrence in securities litigation that is indicative of the Parties' extensive

---

[6] *See, e.g. Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

[7] *See* Securities Class Action Settlements 2019 Review and Analysis (Cornerstone 2020) at p. 20, available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

8

negotiations and underscores the fairness and adequacy of the Settlement. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) (company's contribution "of its own cash to the Settlement" "strongly demonstrate[d] the adequacy of the Settlement amount").

Moreover, even if the Action continued and Plaintiffs were successful at trial, the likely recoverable damages that could be realistically established ranged from $312 million to $432 million. ¶110. Defendants had credible arguments that, even assuming Plaintiffs were successful in establishing liability at trial, damages were well below $100 million and could have been negated entirely given the falsity and loss causation issues discussed above. ¶¶56-60; *see In re Crocs Sec. Litig.*, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013) ("the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery"). Accordingly, the recovery here—which ranges from 31% to 43% of Plaintiffs' estimated likely recoverable damages—is an outstanding result, and by far exceeds the typical recovery of 3.9% of damages recovered in settlements of comparable securities class actions. ¶110. Courts readily approve class action settlements representing similar or lower percentages of recoverable damages.[8]

### 4. The Settlement Class is Adequately Represented, and in the Judgment of All Parties, the Settlement is Fair, Adequate and Reasonable

There is no question here that the Settlement Class was adequately represented. Lead Plaintiffs are institutional investors of the type favored by Congress when passing the PSLRA and have adequately represented the interests of the Settlement Class by closely monitoring and participating in this litigation from the outset through resolution. For instance, Georgia Peace

---

[8] *See, e.g., Crocs*, 306 F.R.D. at 691 (approving settlement recovery of 1.3% of damages as it was "in line with the median…"); *In re Patriot Nat'l, Inc. Sec. Litig.* 828 F. App'x 760, 762 (2d Cir. 2020) (affirming approval of settlement recovery of 6.1% of "potentially recoverable damages"); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving settlement representing 5.5% of likely recoverable damages, noting settlement is "an excellent recovery, returning more than triple the average settlement in cases of this size").

Officers initiated this Action by filing the initial complaint; Lead Plaintiffs were in regular contact with Lead Counsel about the progress of the Action; they took an active role in discussions about the claims and strategies; and each Lead Plaintiff prepared and sat for deposition in connection with class certification.[9] Lead Plaintiffs also played an instrumental role in the settlement negotiations, closely evaluated the proposed Settlement and recommended that it be approved. *See id.* at ¶¶7-10, respectively.  Lead Plaintiffs' endorsement of the Settlement weighs heavily in favor of final approval.  *See In re Vecco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("a settlement reached [] under the supervision and with the endorsement of a sophisticated institutional investor [] is entitled to an even greater presumption of reasonableness").[10]

Moreover, Plaintiffs' claims here are typical of the claims of the Settlement Class because they all purchased DaVita's common stock at artificially inflated prices due to Defendants' alleged material misstatements and omissions and suffered damages as a result, thus Plaintiffs' and the Class's claims are subject to the same proof. Plaintiffs have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest-possible recovery in this Action was firmly aligned with all Settlement Class Members.  *See Crocs*, 306 F.R.D. at 688 (approving settlement where, as here, there is "no evidence that one set of class members will benefit from the settlement to the detriment of another set of class members").

Furthermore, in this District, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Farley v. Family Dollar Stores, Inc.*, 2014 WL 5488897, at *3

---

[9] *See* Declarations of Timothy H. Johnson and Robert W. Carter, attached to the White Decl. as Exhibits B and C, at ¶¶3-7, respectively.

[10] The Court has previously found that Plaintiffs and Lead Counsel have adequately represented the Settlement Class.  *See* ECF No. 104 at 2.  In light of this, Lead Plaintiffs have merged discussion of adequacy of representation under Rule 23 into analysis of this Tenth Circuit factor. *See also* ECF No. 103 at 10, 18.

(D. Colo. Oct. 30, 2014) (Moore, J.).  Here, Plaintiffs retained counsel who are highly experienced in prosecuting securities class actions, and who have a long, successful track record of adequately representing large and diverse groups of investors in similar cases.  *See*, *e.g.*, *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White was "highly experienced" and that "the significant amount of recovery in the settlement agreements attests to their efficiency"); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *1 (M.D. Fla. Oct. 5, 2017) ($73 million recovery).  Moreover, Saxena White has been recognized not only for its major litigation successes in shareholder representative litigation, but also because it is a "federally-certified minority and woman-owned firm"—the only such firm representing institutional investors in the securities class action litigation industry. *Bloom v. Anderson*, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020) (finding Saxena White, with attorneys consisting of "women and lawyers of color at above-average ratios," as "best suited" to represent "a large and heterogeneous group of investors").

Plaintiffs' Counsel vigorously prosecuted the Class's claims for over four years, expending significant resources and devoting over 31,000 hours, and over $14.7 million in staff time, to the prosecution of the Action on a contingency fee basis, resulting in the second largest all-cash federal securities settlement in the District. ¶¶102-12; *see also O'Dowd*, 2019 WL 4279123, at *14 (holding counsel's "effective representation of the class is demonstrated by the favorable settlement that was reached").  Given their extensive experience and success in prosecuting class actions, Lead Counsel's judgment is also entitled to substantial weight.

### 5.   Additional Factors Also Support Final Settlement Approval

The following additional considerations also warrant final approval of the Settlement.

*First*, with respect to the manner in which the Settlement will be distributed, the proposed Plan of Allocation easily satisfies Rule 23(e)(2)(D) because it treats all Settlement Class

Members equally. As set forth in Section IV below, the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

*Second*, the Settlement readily meets the requirements of Rule 23(e)(2)(C).[11] The Notice complied in all respects with the requirements set forth in the Stipulation and this Court's Preliminary Approval Order. ¶¶83-88. Indeed, the Court-approved Notice "gave the Settlement Class notice of the terms of the proposed Settlement Agreement; the rights of Class Members under the Settlement Agreement—including the rights to opt-out, object, and be heard at a Final Fairness Hearing; [and] the application for counsel fees, costs and expenses..." *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *2 (D. Colo. Dec. 16, 2019) (Arguello, J.) (holding "this Notice . . . constitutes due and sufficient notice").

The Notice also contained all the information required by Rule 23(c)(2)(B), the PSLRA, 15 U.S.C. §78u-4(a)(7), and due process because it sufficiently apprised the Class of, among other things, the nature of the Action and the claims asserted; the Settlement's basic terms, including the method of distribution provided for in the Plan of Allocation; and notice of the binding effect of a judgment on Class Members. *See Crocs,* 306 F.R.D. at 693. The Notice also provided information on how to submit a Claim Form and informed Class Members of the avenues available to them to obtain any additional information necessary to make an informed decision, including by directly contacting Lead Counsel or visiting the Settlement website. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 Fed. App'x. 752, 764 (10th Cir. 2020) (holding requirements of Rule 23 and due process satisfied where similar notice was provided).

---

[11] With respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement under which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class reach a certain threshold—generally called a "blow provision"—that is standard in securities class actions. *See Cheng Jiangchen v. Rentech, Inc*., 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) ("This type of agreement is common in securities fraud actions and does not weigh against [settlement] approval.").

Further, Epiq Class Action and Claims Solutions Inc. ("Epiq"), the Court-appointed Claims Administrator, has mailed 132,884 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees.   Epiq published the Summary Notice in *Investor's Business Daily* and via *PR Newswire* and has established a website dedicated to the Action, which provides all information and documentation pertinent to the Settlement. Ex. D at ¶9; ECF No. 106-1 at ¶¶12, 15-16; *see also Tennille v. Western Union Co.*, 785 F.3d 422, 438-39 (10th Cir. 2015) (finding distribution of notice via first-class mail supplemented by publishing notice in widely circulated publications and on settlement website sufficiently adequate); *Crocs*, 306 F.R.D. at 693 (same).

*Third*, the terms of the proposed award of attorneys' fees are discussed in the accompanying Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Fee Motion"). Plaintiffs' Counsel has applied for a fee of 30% of the Settlement Fund. As set forth in detail in the Fee Motion, such a fee is highly reasonable in light of the work performed and the results obtained, and is comparable to other settlements in complex class actions approved in the Tenth Circuit and nationwide. *See, e.g., Tennille v. Western Union Co.,* 809 F.3d 555 (10th Cir. 2015) (award of 30% fee on $135 million settlement);  *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2014 WL 12768451, at *2 (D. Colo. July 31, 2014) (Kane, J.) (awarding 30% of $89.5 million settlement as "a fee award of 30% of the Settlement funds is consistent with awards made within this District and in similar cases").

*Finally*, pursuant to the Preliminary Approval Order, any Settlement Class Member who wanted to be excluded from the Settlement or to object to any aspect of the Settlement, the Plan of Allocation, or to the attorneys' fees and expense award request, was required to submit such exclusion request or objection by February 16, 2021.  ECF No. 104, ¶¶14, 16.  Lead Plaintiffs are

proud to report that no Settlement Class Member has objected to any aspect of the Settlement, and out of the 132,884 Notice Packets that have been mailed to potential Settlement Class Members, Epiq has received only one valid request for exclusion from the Class submitted by an individual retail investor who held a relatively small number of shares. *See* Ex. D at ¶¶10-13. This reaction is particularly significant given that approximately 87% of the Class consists of sophisticated institutional investors with the resources and motivation to object, if warranted. "The fact that no class member objects shows that the class also considers this settlement fair and reasonable." *Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *3 (D. Colo. May 21, 2019) (Martínez, J.).  The overwhelmingly positive reaction of the Settlement Class to the Settlement further favors approval by the Court.  *See Ramos,* 2020 WL 6585849, at *3.

IV.    **THE PLAN OF ALLOCATION SHOULD BE APPROVED**

The objective of a plan of allocation is to provide an equitable method for distributing a settlement fund among eligible class members.  In this District, "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable" and should be approved. *O'Dowd*, 2019 WL 4279123, at *15. The Plan of Allocation, which is set forth in the Notice disseminated to the Settlement Class, also warrants the Court's approval.

Here, the proposed Plan of Allocation was developed by Lead Plaintiffs in consultation with their damages expert after careful consideration of Plaintiffs' theories of liability and alleged damages under the Exchange Act. ¶¶91-94. In developing the Plan, Lead Plaintiffs' damages expert calculated the estimated amount of artificial inflation in the price of DaVita's common stock during the Settlement Class Period by considering how the stock price changed after the announcement of each alleged corrective disclosure and adjusting for price changes that were attributable to market or industry forces, or otherwise unrelated to the alleged fraud.  *See* ECF No. 103-3 at 14-15 (Notice at ¶55).  Under the Plan of Allocation, a Recognized Loss

Amount will be calculated for each purchase or acquisition of DaVita common stock by an eligible Class Member in order to derive the amount of each Authorized Claimant's Recognized Claim, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See* Notice at ¶¶58-60, 66-67. Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one, and Plaintiffs respectfully submit that this Court should approve the Plan of Allocation submitted here. *See, e.g., Crocs*, 306 F.R.D. at 693 (approving as fair and reasonable a similar plan that "reimburses class members based on the extent of their injuries").

## V.        THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. *See* Preliminary Approval Order (ECF No. 104) at 2 ("The Court also finds that the Lead Plaintiffs have satisfied all of the requirements of Federal Rule of Civil Procedure 23(a) and at least one provision of Rule 23(b)"). Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order, Lead Plaintiffs' unopposed motion for preliminary approval of the Settlement (ECF No. 103), and Lead Plaintiffs' motion for class certification (ECF Nos. 83, 83-1), Lead Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

## VI.       CONCLUSION

Based on all of the foregoing reasons, and the declarations submitted herewith, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable and adequate.

Dated: February 23, 2021                      Respectfully submitted,

                                              *s/Rusty E. Glenn*
                                              Rusty E. Glenn

                                              **SHUMAN, GLENN & STECKER**
                                              Rusty E. Glenn
                                              600 17th Street, Ste. 2800 South
                                              Denver, CO 80202
                                              Telephone: 303-861-3003
                                              Facsimile: 303-536-7849
                                              rusty@shumanlawfirm.com

                                              -and-

                                              Kip B. Shuman
                                              100 Pine Street, Ste. 1250
                                              San Francisco, CA 94111
                                              Telephone: 303-861-3003
                                              Facsimile: 303-536-7849
                                              kip@shumanlawfirm.com

                                              *Liaison Counsel for Lead Plaintiffs and the*
                                              *Proposed Settlement Class*

                                              **SAXENA WHITE P.A.**
                                              Maya Saxena
                                              Joseph E. White, III
                                              Lester R. Hooker
                                              Dianne M. Pitre
                                              7777 Glades Road, Ste. 300
                                              Boca Raton, FL 33434
                                              Telephone: (561) 394-3399
                                              Facsimile: (561) 394-3382
                                              msaxena@saxenawhite.com
                                              jwhite@saxenawhite.com
                                              lhooker@saxenawhite.com
                                              dpitre@saxenawhite.com

                                              -and-

                                              Steven B. Singer
                                              Kyla Grant
                                              Sara DiLeo
                                              10 Bank Street, 8th Floor
                                              White Plains, NY 10606
                                              Telephone: (914) 437-8551

Facsimile: (888) 631-3611
ssinger@saxenawhite.com
kgrant@saxenawhite.com
sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2021, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants.

*/s/ Rusty E. Glenn*
Rusty E. Glenn