**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-0304-WJM-NRN

PEACE OFFICERS' ANNUITY AND BENEFIT FUND OF GEORGIA, individually and on behalf of all others similarly situated; and
JACKSONVILLE POLICE AND FIRE PENSION FUND, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

DAVITA INC.;
KENT J. THIRY;
JAMES K. HILGER; and
JAVIER J. RODRIGUEZ,

    Defendants.

---

**ORDER GRANTING LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

---

Lead Plaintiffs Peace Officers' Annuity and Benefit Fund of Georgia and the Jacksonville Police and Fire Pension Fund (jointly, "Lead Plaintiffs") sued Defendants DaVita Inc., Kent J. Thiry, James K. Hilger, and Javier J. Rodriguez (collectively, "Defendants") for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Currently before the Court is Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, which is unopposed ("Final Approval Motion") (ECF No. 107); and Lead Plaintiffs' Notice of Non-opposition and Reply in Further Support of Motion for Final Approval of Class Action

Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 111).

For the reasons stated below, the Final Approval Motion is granted.

## I. BACKGROUND

Lead Plaintiffs filed this securities class action on February 1, 2017. (ECF No. 1.) In their Amended Complaint, they allege that throughout the Class Period, which is February 26, 2015 and October 6, 2017, Defendants violated federal securities laws—specifically, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5—by making materially false and misleading statements and omissions regarding Defendants' alleged scheme to "steer" all patients eligible for and/or enrolled in Medicare and/or Medicaid away from government plans and into high-cost commercial insurance so DaVita could obtain higher dialysis reimbursement rates. (ECF No. 36.) Lead Plaintiffs, who are both pension systems or funds, purchased DaVita common stock during the Class Period and allege they suffered damages as a result of Defendants' false and/or misleading statements and/or material omissions. (*Id.* ¶¶ 21–22.)

On March 27, 2018, Defendants filed a Motion to Dismiss the Amended Complaint Under Federal Rule of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (ECF No. 43.) On March 28, 2019, the Court issued an order denying Defendants' motion to dismiss Lead Plaintiffs' Amended Complaint; in that Order, the Court sustained only five out of the 27 alleged misstatements in the case; held that Lead Plaintiffs' ability to establish the falsity of the

2

remaining 22 misstatements was "premised on the impropriety or illegality of DaVita's relationship with [the American Kidney Fund]"; and reserved judgment on whether the Amended Complaint "adequately pled the falsity of these statements."  (ECF No. 53.)

Subsequently, on February 27, 2020, Defendants filed a motion for reconsideration seeking the dismissal of the remaining statements, arguing that the "PSLRA requires plaintiffs asserting securities claims premised on illegal conduct to plead the underlying illegal conduct with specificity," and that the DOJ's decision to decline to intervene in the related *qui tam* case against DaVita "negat[ed] the sole basis for Plaintiffs' claim of illegality."  (ECF No. 91 at 6–7.)

On September 18, 2020, shortly after the motion for reconsideration was fully briefed and Lead Plaintiffs' motion to certify the class was almost fully briefed, but before the Court ruled on those motions, Lead Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 103.)  To reach this settlement, the parties participated in six mediations with former United States District Judge Layn R. Phillips.  (ECF No. 107 at 7.)

On October 27, 2020, the Court granted the motion for preliminary approval of the class action settlement ("Preliminary Approval Order").[1]  (ECF No. 104.)  The stipulation of settlement is in the record ("Settlement Agreement").  (ECF No. 103-1.)

As part of the Preliminary Approval Order, the Court certified a class for settlement purposes only, defined as "All persons and entities who purchased or otherwise acquired DaVita common stock during the period between February 26, 2015

---

[1] In that Order, the Court denied the motion for reconsideration and the motion to certify class without prejudice to refiling if the settlement agreement does not receive final approval. (ECF No. 104.)

3

and October 6, 2017, inclusive, and were damaged thereby." (ECF No. 104 ¶ 2.) The Court also approved the parties' proposed notice, claim form, and summary notice. (*Id.* ¶ 4.) The settlement includes a *cy pres* provision, which the Court also approved. (*Id.* ¶ 6.) Finally, the Court set a Settlement Fairness Hearing for March 30, 2021. (*Id.* ¶ 4.)

On February 23, 2021, Lead Plaintiffs filed their Final Approval Motion (ECF No. 107) and Fee Motion (ECF No. 108). Both motions are unopposed, and no objections or opposition to either motion were filed with the Court.[2]

In a declaration recently filed with the Court, the third-party class action administrator ("Epiq") represents that through March 22, 2021, a total of 137,901 notice packets were mailed to potential settlement class members and nominees. (ECF No. 111-4 at 4.) Through March 22, 2021, Epiq has received 14,783 claims; approximately 12,011 claims were filed electronically by or on behalf of institutions, and 2,772 claims were submitted by or on behalf of individuals.[3] The March 20, 2021 claim filing deadline has passed, and Epiq will continue to accept and process claims received after the filing deadline. (*Id.* at 5.) To the extent that these claims are deemed eligible and their acceptance will not delay distribution of the net settlement fund, Lead Counsel will present these late but otherwise eligible claims for Court approval when Lead Counsel moves the Court to distribute the net settlement fund to settlement class members. (*Id.*)

Epiq has also maintained a settlement website and a toll-free number to respond to inquiries from settlement class members. (*Id.* at 4–5.) As of February 16, 2021, the deadline for objections or exclusions from the settlement class members, Epiq received

---

[2] The deadline for any opposition to the motions was March 16, 2021. (ECF No. 104 ¶ 15.)

[3] The aggregate value of the claims submitted is not clear from the papers.

no objections and only one valid request for exclusion, representing the purchase/acquisition of 1,425 shares of DaVita common stock, which Lead Plaintiffs state is a *de minimis* amount of stock. (ECF No. 107-5 at 5; ECF No. 111 at 3.) Additionally, as of February 22, 2021, Epiq has not received or been informed of any objection by any settlement class member to any aspect of the settlement, the Plan of Allocation, or Lead Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses. (ECF No. 107-5 at 5; ECF No. 111-4 at 4.)

The Court held a Settlement Fairness Hearing on March 30, 2021. (ECF No. 114.) No objectors appeared at the hearing, and to date, neither the Court nor Epiq have received any objection to the settlement from any class member. At the Settlement Fairness Hearing, the Court issued an oral ruling granting the Final Approval Motion (ECF No. 107) and taking under advisement Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 108). The Court noted at the conclusion of the hearing that this written order would issue in order to fully state the reasons for the Court's decision.

## II. LEGAL STANDARD

In deciding whether to approve a settlement in a class action, a court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

A court considers the following four factors in reviewing a proposed class action settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing

5

the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). The Court may also consider the fact that no objections were filed by any class members. *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("No timely objection was raised by any Class Member to the proposed settlement, and less than 5% of all Class Members have chosen to opt out. One untimely objection, improper in other regards, was filed and subsequently withdrawn prior to the fairness hearing. No objection was raised at the fairness hearing. The Court gives these factors substantial weight in approving the proposed settlement.").

New amendments to Rule 23 became effective on December 1, 2018. These amendments gave four new factors a court must find to render an agreement as fair, reasonable, and adequate:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

6

>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The advisory committee noted these new factors were not meant to displace any circuit's unique factors, but rather to focus courts on the core concerns in deciding whether to approve a proposed settlement. *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020) (citing Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment). The Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed into the new Rule 23. *See id.* Accordingly, a court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors.

## III. SETTLEMENT AGREEMENT ANALYSIS

Having thoroughly reviewed the Final Approval Motion and the Settlement Agreement in the context of both the Tenth Circuit's factors and the factors set forth in Rule 23, the Court finds that the settlement negotiated by counsel is fair, reasonable, and adequate.

The parties have demonstrated that the Settlement Agreement was fairly and honestly negotiated at arms' length and in good faith by counsel experienced in these types of cases. There is no evidence of fraud or collusion between the parties. The parties engaged in extensive discovery, participated in Federal Rule of Civil Procedure 12 motion practice, undertook six mediation sessions, and negotiated a Plan of Allocation for the class members, which includes a *cy pres* award for unclaimed funds.

Judge Phillips provided a declaration attesting that "the negotiations between the Parties were vigorous and conducted at arm's-length and in good faith"; "that the representation provided by counsel for each of the Parties was of the highest caliber"; and that "it is my opinion that the Settlement is fair and reasonable, and I strongly support the Court's approval of the Settlement in all respects." (ECF No. 107-2); *see In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (utilization "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved").

The parties have also shown that serious questions of fact and law exist, particularly with regard to the Court having sustained only five out of the 27 alleged misstatements in the case in the Order on Defendants' motion to dismiss (ECF No. 53), the DOJ declining to intervene in the related *qui tam* case against DaVita, and Lead Plaintiffs' questionable ability to prove liability and damages because they might not have been able to establish loss causation. *See In re Crocs Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) ("[l]itigating an action under the PSLRA is not a simple undertaking"). These factual and legal issues weigh in favor of approving the Settlement Agreement.

Further, the Court finds that the value of the Settlement Agreement outweighs the possibility of recovery after protracted litigation. Courts have held that the presumption in favor of voluntary settlement agreements

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy

8

> favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *accord Hodge v. Signia Marketing, Ltd.*, 2017 WL 5900344, at *3 (D. Colo. Nov. 30, 2017). Here, Lead Plaintiffs state that the $135 million recovery achieved is the second largest all-cash securities class action recovery in the history of this District and is among the top five such recoveries in the history of the Tenth Circuit. (ECF No. 107 at 5.) Lead Plaintiffs estimate that the recovery ranges from 31% to 43% of Plaintiffs' estimated likely recoverable damages. (*Id.* at 13.) The recovery for investors not only includes the proceeds of Defendants' insurance tower, but also includes a substantial monetary contribution by DaVita. (*Id.* at 12); *see In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) (company's contribution "of its own cash to the Settlement" "strongly demonstrate[d] the adequacy of the Settlement amount").

The Court also finds that Lead Plaintiffs adequately represented the class. Lead Plaintiffs are institutional investors of the type favored by Congress when passing the PSLRA and have adequately represented the interests of the settlement class by closely monitoring and participating in this litigation from the outset through resolution. Lead Plaintiffs played an instrumental role in the settlement negotiations, closely evaluated the proposed settlement, and recommended that it be approved.

Plaintiffs' claims here are typical of the claims of the class because they all purchased DaVita's common stock at artificially inflated prices due to Defendants'

Case 1:17-cv-00304-WJM-NRN  Document 118  Filed 04/13/21  USDC Colorado  Page 10 of 15

Case 1:17-cv-00304-WJM-NRN  Document 118  Filed 04/13/21  USDC Colorado  Page 10 of 15

alleged material misstatements and omissions and suffered damages as a result, thus Plaintiffs' and the class's claims are subject to the same proof. Plaintiffs have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest-possible recovery in this class action was firmly aligned with all class members. Additionally, the Court gives weight to the judgment of Lead Counsel, who are highly experienced in prosecuting securities class actions, that the settlement is an excellent result for the class. Finally, the Court notes that Defendants also stated at the Settlement Fairness Hearing that the settlement is, in their estimation, a fair, hard-fought, and reasonable result for both parties.

The Court will also briefly discuss various additional factors supporting final approval of the Settlement Agreement. First, the Plan of Allocation satisfies Rule 23(e)(2)(D) because it treats all class members equally. The settlement fund will be allocated to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims.

Next, the settlement also satisfies Rule 23(e)(2)(C). The notice complied with both the Preliminary Approval Order and the Settlement Agreement. The notice contained all the information required by Rule 23(c)(2)(B), the PSLRA, 15 U.S.C. § 78u-4(a)(7), and due process because it sufficiently apprised the class of, among other things, the nature of the action and the claims asserted; the settlement's basic terms, including the method of distribution provided for in the Plan of Allocation; and notice of the binding effect of a judgment on the class. Epiq has properly mailed the notice packet to potential class members, published the summary notice, and established a website with information relevant to the settlement.

Third, the Court has under advisement the parties' unopposed Fee Motion. (ECF No. 108.) At the Settlement Fairness Hearing, the Court discussed the reasonableness of the Fee Motion at length with counsel for both parties and will issue a ruling on the Fee Motion in due course.

Finally, the Court has considered the significant fact that no class member has objected to any aspect of the settlement, and Epiq has received only one valid request for exclusion from the class submitted by an individual retail investor who holds a relatively small number of shares. This response by the class to the proposed settlement is particularly significant given that approximately 87% of the class consists of sophisticated institutional investors with the resources and motivation to object, if warranted. "The fact that no class member objects shows that the class also considers this settlement fair and reasonable." *Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *3 (D. Colo. May 21, 2019).

Based on these considerations, the Court approves the Plan of Allocation, grants final certification to the settlement class under Rules 23(a) and (b)(3), and finds good cause to order final approval of the Settlement Agreement entered into between the parties to this action.

## IV. *CY PRES* AWARD

The *cy pres* doctrine in class action settlements "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Tennille v. W. Union Co.*, 809 F.3d 555, 560 n.2 (10th Cir. 2015) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). District courts in the Tenth Circuit have approved *cy pres* awards to third-party beneficiaries in

11

class action settlements. *See In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *5 (D. Colo. Aug. 28, 2013); *Childs v. Unified Life Ins. Co.*, 2012 WL 13018913, at *5 (N.D. Okla. Aug. 21, 2012). A *cy pres* award is appropriate "only if the beneficiary is the next best use for indirect class benefit" and the "*cy pres* beneficiary . . . [is] related to the nature of a plaintiff's claims." *Bailes v. Lineage Logistics, LLC*, 2016 WL 4415356, at *7 (D. Kan. Aug. 19, 2016) (internal quotation marks omitted and alterations incorporated).

Courts also evaluate whether beneficiaries are "carefully chosen to account for the nature of the lawsuit, the objectives of the underlying statutes, and the interests of silent class members, including their geographic diversity*." In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504 (D. Kan. 2012). Courts have rejected *cy pres* awards when the parties failed to identify a proposed beneficiary, or when the beneficiary was "so unrelated to the claims" that the class members would not benefit. *Better v. YRC Worldwide Inc.*, 2013 WL 6060952, at *6 (D. Kan. Nov. 18, 2013); *Bailes*, 2016 WL 4415356, at *7; *but see In re Crocs*, 2013 WL 4547404, at *5 (preliminarily approving *cy pres* provision that awarded unallocated funds to an charitable organization with no immediately discernable ties to the purpose of the lawsuit).

Under the Settlement Agreement, "[a]t such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court." (*See* ECF No. 103-3 ¶ 69; ECF No. 106-1 at 13 ¶ 69.) Based on their prior experience, Lead Plaintiffs anticipate that any *cy pres* award in this case will range from $0 to

$30,000.  (ECF No. 117 at 2.)

In Lead Plaintiffs' Supplement to Unopposed Motion for Final Approval of Class Action Settlement, the parties suggest three *cy pres* recipients.  (*Id.* at 2–3.)  First, they propose the Children's Hospital Colorado Foundation, which supports the region's only nonprofit pediatric hospital, Children's Hospital Colorado.  The Children's Hospital Colorado treats pediatric end-stage kidney disease and provides pediatric kidney transplants through the Kidney Center's Kidney Transplant Program.  Next, the parties propose the Investor Protection Trust, which is a nonprofit organization devoted to investor education.  The primary mission of this organization is to provide independent, objective information needed by consumers to make informed investment decisions.  Finally, the parties propose the Legal Aid Foundation of Colorado, which promotes equal access to justice by raising funds to provide civil legal services for low-income people in Colorado.

Regarding whether the *cy pres* beneficiary is related to the nature of plaintiffs' claims, Lead Plaintiffs submit that there are few, if any charitable organizations that are established to directly assist the members of the settlement class here, which is primarily comprised of large, sophisticated institutional investors such as John Hancock, Dimensional, Goldman Sachs, and JP Morgan.  (*Id.* at 3.)  However, the above-identified charitable organizations either support treatment for end-stage kidney disease to children in Colorado, support investor education in general, or provide free legal services to people in the state of Colorado, all of which are objectives that are indirectly related to Lead Plaintiffs' claims.  (*Id.*)

Upon due consideration, the Court finds that any of the three suggested

beneficiaries is appropriate. Lead Plaintiffs may choose the manner in which they allocate the balance of the settlement fund among the Children's Hospital Colorado Foundation, the Investor Protection Trust, and the Legal Aid Foundation of Colorado. Given the nature and objectives of the lawsuit, the Court finds that the *cy pres* award is appropriate and the next best use of funds to provide an indirect class benefit for the class members.

## V. REIMBURSEMENT AWARDS

When considering the appropriateness of an incentive award for class representatives, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

The parties propose that Lead Plaintiffs will each receive $10,000 as an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class"—awards that are specifically envisioned in the PSLRA and routinely awarded by courts nationwide. (ECF No. 108 at 20; ECF No. 107-1 at 53–54 (detailing Lead Plaintiffs' participation in this case).) *See* 15 U.S.C. § 78u-4(a)(4); *In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, 2015 WL 3582265, at *5 (D. Colo. June 5, 2015) (finding $10,000 award "reasonable" considering plaintiff's extensive participation in the case). Here, Lead Plaintiffs devoted considerable time and effort in actively supervising the litigation over a multi-year period, including by collecting and producing

numerous documents and responding to interrogatories; preparing for and attending their depositions; and participating in ongoing settlement discussions. (ECF No. 107-1 at 53–54.) Further, Lead Plaintiffs have been fully committed to pursuing the interests of the settlement class and have actively and effectively complied with the many demands that arose during the litigation. The Court finds that their efforts warrant reimbursement.

For the reasons explained above, the Court approves a reimbursement award of $10,000 for each of the Lead Plaintiffs.

## VI. CONCLUSION

1. Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (ECF No. 107) is GRANTED;

2. The Settlement Agreement (ECF No. 103-1) is APPROVED; and

3. The Court SHALL RETAIN jurisdiction over the interpretation and implementation of the Settlement Agreement.

Dated this 13th day of April, 2021.

BY THE COURT:

William J. Martinez
United States District Judge