IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0304-WJM-NRN

PEACE OFFICERS' ANNUITY AND BENEFIT FUND OF GEORGIA, individually and on behalf of all others similarly situated; and
JACKSONVILLE POLICE AND FIRE PENSION FUND, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

DAVITA INC.;
KENT J. THIRY;
JAMES K. HILGER; and
JAVIER J. RODRIGUEZ,

    Defendants.

---

## ORDER GRANTING LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

---

This matter is before the Court on Lead Plaintiffs' Peace Officers' Annuity and Benefit Fund of Georgia and the Jacksonville Police and Fire Pension Fund (jointly, "Lead Plaintiffs") Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, filed on February 23, 2021 ("Motion"). (ECF No. 108.) The Motion is unopposed. This Court has subject matter jurisdiction pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa *et seq.,* and 28 U.S.C. § 1331.

### I. BACKGROUND

The background of this case has been set forth at length in prior orders and therefore the Court presumes familiarity with the facts of this case. (*See, e.g.*, ECF No.

118.)  On April 13, 2021, the Court entered the Order Granting Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation.  (*Id.*)  In the instant Motion, Lead Plaintiffs request that the Court enter an order directing: (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund; (ii) reimbursement of $547,409.27 in litigation expenses; and (iii) Representative Reimbursements of $10,000 to Lead Plaintiffs for their efforts in representing the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  No class members have objected to Lead Plaintiffs' requests.

## II. FEE AWARD

Under the PSLRA, the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 78u–4(a)(6).  In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis."[2] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method").  Because this is a common fund case and because Lead Plaintiffs' fee request is for a percentage of the common fund, the Court will

---

[1] The Court has already granted Lead Plaintiffs' request for reimbursement awards (ECF No. 118 at 14–15) and need not discuss this request further.

[2] The lodestar amount is calculated based upon "the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust[ing] the lodestar upward or downward to account for the particularities of the suit and its outcome."  *Zinna v. Congrove*, 680 F.3d 1236, 1239, 1242 (10th Cir. 2012) (quotation marks omitted).

calculate the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Id.* at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee . . .; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 454–55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483. "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455–56 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

**A.    Time and Labor Involved**

Lead Plaintiffs submit that prosecuting this case required Lead Counsel to

3

expend more than 31,000 hours, equivalent to $14.7 million in attorney and staff time, over the course of more than four years of vigorous litigation. (ECF No. 108 at 11.)

These efforts included an extensive and extremely comprehensive investigation, which included locating numerous internal documents and confidential witnesses that proved critical in drafting a highly-detailed Complaint sufficient to defeat Defendants' motion to dismiss. (*Id.* at 10.) Furthermore, Lead Counsel engaged in comprehensive discovery, including consulting with various economic and industry experts; reviewing 845,000 pages of documents produced by Defendants and over twenty third-parties; collecting and producing over 25,000 pages in response to Defendants' document requests; extensive class certification-related briefing and discovery, including defending Lead Plaintiffs' depositions and the deposition of Lead Plaintiffs' expert on market efficiency, and deposing Defendants' rebuttal expert; and opposing Defendants' motion for partial reconsideration. (*Id.*) In addition, the extensive settlement negotiations were time-consuming, including submitting detailed mediation statements and presentations over the course of six formal mediations that culminated in the Settlement. (*Id.* at 10–11.) In the Motion, Lead Plaintiffs note that Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration process and assist with implementation of the Settlement, which was approved following the Fairness Hearing. (*Id.* at 11 n.4.)

Based on the foregoing efforts expended by Lead Counsel, the Court concludes that the time and labor expended was appropriate given the nature of the case and finds that this factor supports the requested award.

### B. The Amount Involved and Results Obtained

Courts in this District have repeatedly found that when determining the amount of fees to be awarded, the "greatest weight should be given to the monetary results achieved for the benefits of the class." *Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009); *see also Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *7 (D. Colo. Apr. 22, 2015) ("The degree of success . . . is a critical factor in determining the amount of fees to be awarded.").

As Lead Plaintiffs point out, the monetary result here is "exceptional." (ECF No. 108 at 13.) The $135 million recovery represents the second-largest all-cash securities class action recovery ever obtained in this District, is among the top five such settlements in Tenth Circuit history, and is more than twenty times larger than the $6.7 million median for securities class action settlements in the Tenth Circuit from 2010 to 2019. (*Id.*) Here, the likely maximum damages at trial ranged from $312 million to $432 million, and therefore the Settlement recovers between 31% and 43% of the Class's damages—eight to eleven times greater than the median 3.9% recovery in similar actions, a significant achievement which, in the Court's view, further supports granting the fee request. *See In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving settlement representing "approximately 1.3% of the amount of damages that could be achieved"). Given the extraordinary nature of the recovery for class members, the Court finds that this factor also favors granting the fee request.

### C. Customary Fee and Awards in Similar Cases

Courts in the Tenth Circuit have noted that "the typical fee award in complex cases is around one third of the common fund." *In re Crocs*, 2014 WL 4670886, at *3;

5

*see also Diaz*, 2019 WL 2189485, at *5 ("33% fee award falls within the norm"); *Nakkhumpun v. Taylor*, 2016 WL 11724397, at *5 (D. Colo. June 13, 2016) (same). Moreover, courts in the Tenth Circuit have repeatedly found that a 30% fee award is reasonable even in the context of so-called "megafund" settlements, because applying an arbitrary sliding fee percentage scale in large settlements "fails to provide the proper incentive for counsel and is fundamentally at odds with the percentage-of-the-fund approach favored by the Tenth Circuit." *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1114 (D. Kan. 2018) (awarding 33.3% fee of $1.51 billion settlement). In the Motion, Lead Plaintiffs provide a detailed chart demonstrating that numerous courts in the Tenth Circuit and nationwide have awarded 30% fees or higher in large complex class actions. (ECF No. 108 at 15.)

In addition, the Court notes that a lodestar cross-check, while not required in the Tenth Circuit, supports the fee request. Here, Lead Counsel's total lodestar is $14,717,351.25, and the requested 30% fee thus equates to a multiplier of 2.75, which is at the low end of the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit. *See, e.g.*, *In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, 2015 WL 3582265, at *5 (D. Colo. June 5, 2015) (multiplier of 3 "in line with the multipliers awarded in similar cases"); *In re Crocs*, 2014 WL 4670886, at *4 (referencing District cases approving multipliers ranging from 2.5 to 4.6).

Moreover, Lead Counsel's hourly rates—ranging from $365 to $895 for attorneys, and $250 to $275 for support staff—are lower than hourly rates previously approved by this Court and others within the District. *See Ramos v. Banner Health*, 2020 WL 6585849 (D. Colo. Nov. 10, 2020) and ECF No. 504 (approving rates ranging

6

from $490 to $1,060 per hour); *In re Molycorp Inc. Sec. Litig.*, 2017 WL 11598681, at *1–2 (D. Colo. June 16, 2017) (approving 30% fee request in securities class action where attorney hourly rates ranged from $435 to $955 per hour); *In re Crocs*, 2014 WL 4670886, at *4, ECF No. 208 at 95 (awarding 30% fee where attorney hourly rates were up to $935 per hour and were "higher than the rates charged by attorneys of similar skill and experience in the Denver legal market"). The Court concludes this factor also supports the fee request.

**D.    The Contingent Nature of the Fee, Undesirability of the Action, and Preclusion of Other Employment**

"Federal securities class actions require plaintiffs' counsel to expend substantial time and effort with no guarantee of success." *In re Crocs*, 2014 WL 4670886, at *5. As a result, "[s]uch cases are often seen as undesirable." *In re Spectranetics Corp. Sec. Litig.*, 2011 WL 13238696, at *2 (D. Colo. Apr. 4, 2011).

As Lead Plaintiffs point out, the vast majority of securities class actions draw multiple applications for appointment as lead plaintiff and lead counsel—that is the very purpose of the PSLRA provision requiring notice to be disseminated advising shareholders of the lead plaintiff deadline. (ECF No. 108 at 17.) Here, however, no law firm other than Saxena White submitted a leadership application—a fact that underscores the perceived "undesirability" and difficulty of the case. (*Id.*) Courts have "recognize[d] that counsel should be rewarded for taking on a case from which other law firms shrunk . . . the proper incentive here is a 30% fee." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011); *see also Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *10–11 (S.D. Fla. Oct. 17, 2016) (undesirability shown where "Counsel was the only counsel willing to take on this

7

litigation").

Importantly, the risk that Lead Counsel "would recover no compensation for their extensive efforts was not merely hypothetical, especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision." *In re Crocs*, 2014 WL 4670886, at *5. To date, Lead Counsel has received no compensation for its prosecution of this case, and since the extensive commitment of time and resources devoted here necessarily entailed the preclusion of other projects, the primary focus of this factor is to acknowledge this incongruence by permitting a higher recovery to compensate for the risk of recovering nothing. As courts in this District have held, "[a] contingent fee arrangement often weighs in favor of a greater fee because [s]uch a large investment of money [and time] place[s] incredible burdens upon law practices." *In re Crocs*, 2014 WL 4670886, at *4. The significant burdens inherent in a contingent fee arrangement in a case of this magnitude "weighs heavily in support of a substantial fee award." *Syngenta*, 357 F. Supp. 3d at 1113. The Court concludes that this factor also weighs in favor of the requested award.

**E. Additional Considerations**

The Court also notes that none of the class members objected to the requested attorneys' fees, which weighs in favor of the requested award. *See Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees.").

The Court finds that in combination the applicable *Johnson* factors compel its conclusion that 30% of the $135 million common fund, or $40,500,000, reflects a reasonable attorney fee award in this case. *See* 15 U.S.C. § 78u–4(a)(6). As a consequence, the Court will grant in full Lead Plaintiffs' request for attorneys' fees.

### III. EXPENSES

The PSLRA also contemplates compensating class counsel for expenses incurred in prosecuting a class action. 15 U.S.C. § 78u–4(a)(6). "[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . *reasonable* litigation expenses from that fund." *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423, 434 (E.D. Pa. 2001) (quotation marks omitted, emphasis in original). Expenses "'that are normally itemized and billed in addition to the hourly rate should be included in fee allowances . . . if reasonable in amount.'" *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (quoting *Ramos*, 713 F.2d at 559).

Lead Counsel seek reimbursement of $547,409.27 in litigation expenses reasonably incurred in litigating the Action, which expenses are routinely awarded in similar actions, including expert fees, mediation expenses, discovery-related costs, and investigation expenses. (ECF No. 108 at 20.) *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2014 WL 12768451, at *3 ($3.5 million of expenses found reasonable in securities class action). The White Declaration contains a full breakdown of the litigation expenses. (*See* ECF No. 107-1, White Decl. Exs. E, F at ¶ 8, and G at ¶ 9.) Notably, the requested expenses are significantly less than the $750,000 amount set forth in the Notice, and no objections have been lodged thereto—further supporting the reasonableness of the expense reimbursement request. (ECF No. 108 at 20 (citing

9

ECF No. 107-1 at ¶¶ 134–35).)

Upon due consideration, the Court is satisfied that the expenses are reasonable, given the issues presented and duration of this case, and are of the type normally billed to clients. The Court will therefore award Lead Counsel $547,409.27 in litigation expenses reasonably incurred in the prosecution of this case.

### IV. CONCLUSION

1. Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (ECF No. 108) is GRANTED;

2. The Court awards to Plaintiffs attorneys' fees in the amount of 30% of the Settlement Fund, or $40,500,000, and the reimbursement of $547,409.27 in litigation expenses; and

3. Should there be an unreasonable delay in the payment of these sums to Lead Plaintiffs, they are granted leave to seek an order from this Court setting a deadline for such payment.

Dated this 15th day of July, 2021.

BY THE COURT:

*[signature]*

William J. Martinez
United States District Judge